UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**BRUCE GRIGOR,**

  **Plaintiff,**

 v.

  Case No. 2:10-cv-20
  JUDGE GREGORY L. FROST
  Magistrate Judge E.A. Preston Deavers

**STARMARK HOSPITALITY GROUP LLC, et al.,**

  **Defendants.**

**OPINION AND ORDER**

  This matter is before the Court for consideration of the March 8, 2010 motion to dismiss for lack of personal jurisdiction, or, in the alternative, to transfer venue (Doc. # 5) filed by Defendants, Starmark Hospitality Group, LLC and Lee Swanson, a memorandum in opposition (Doc. # 11) filed by Plaintiff, Bruce Grigor, and a reply memorandum (Doc. # 12) filed by Defendants. For the reasons that follow, the Court finds that transfer is warranted.

**I.  Background**

  Plaintiff, Bruce Grigor, is an Ohio resident who, prior to October 2008, worked for Hooters of America, Inc. In September 2008, Plaintiff traveled to North Dakota to assist with the opening a new Hooters restaurant franchised by Defendant Starmark Hospitality Group LLC ("Starmark"), a company organized under the laws of North Dakota, where it has its principal place of business. Starmark operates two Hooters restaurants, as well as a nightclub. Defendant Lee Swanson, who resides in North Dakota, owns Starmark.

1

While Plaintiff was in North Dakota, Defendants approached him about coming to work for Starmark. Plaintiff insists that he informed Defendants that any discussions regarding potential employment would have to wait until he completed his job duties in North Dakota and returned home to Ohio. After Plaintiff returned to Ohio, Jon Taffer, the president of Starmark, allegedly recruited Plaintiff via email and telephone calls to quit his job, accept employment with Starmark, and relocate to North Dakota. In October 2008, Plaintiff quit his job and accepted the position of Starmark's Corporate Director of Operations. Plaintiff left Ohio and began working in this new job on November 10, 2008. The next day, however, Plaintiff allegedly learned that many of the conditions of the job were not as they had been represented to be. Plaintiff continued working in his new job until May 2009.

On January 7, 2010, Plaintiff filed the instant suit over his alleged discharge. In his four-count complaint, Plaintiff asserts claims for breach of express contract, breach of implied-in-fact contract, promissory estoppel, and fraudulent misrepresentation or inducement. (Doc. # 2 ¶¶ 28-62.) Defendants subsequently filed a motion to dismiss for lack of personal jurisdiction, or, in the alternative, to transfer the action to North Dakota. (Doc. # 5.) The parties have completed briefing the issues involved, and the motion is now ripe for disposition.

## II. Personal Jurisdiction

### A. Standard Involved

Under Federal Rule of Civil Procedure 12(b)(2), Defendant may move to dismiss a claim for lack of personal jurisdiction. In ruling upon a Rule 12(b)(2) motion, a court has three alternatives: (1) it may make a determination based on written submissions and affidavits alone;

2

(2) it may permit discovery in aid of the motion; or (3) it may conduct an evidentiary hearing on the merits of the motion. *Serras v. First Tennessee Bank National Association*, 875 F.2d 1212, 1214 (6th Cir. 1989). Where, as here, the Court elects to rule on the matter based upon the pleadings and other documentary evidence, Plaintiff need only establish a *prima facie* case for jurisdiction. *Bridgeport Music, Inc. v. Still N The Water Publ'g,* 327 F.3d 472, 478 (6th Cir. 2003). Although the Court considers the pleadings in a light most favorable to Plaintiff, Plaintiff must still set forth specific facts demonstrating that the Court has jurisdiction. *Serras,* 875 F.2d at 1214. If the facts support jurisdiction, the Court must deny the motion to dismiss even in the face of controverting evidence provided by Defendants. *Id.* The Sixth Circuit has explained that "any other rule would empower a defendant to defeat personal jurisdiction merely by filing a written affidavit contradicting jurisdictional facts alleged by a plaintiff." *Id.* (citing *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977)).

It is well settled that "[i]n diversity cases, the federal court applies the law of the forum state in which it sits to determine if personal jurisdiction is appropriate." *Rabiroads v. DFK Leasing Co., Inc.,* 68 F. Supp. 2d 850, 852 (N.D. Ohio 1999). A court may exercise personal jurisdiction if the state's long-arm statute reaches the defendants and the exercise of jurisdiction comports with federal due process. *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F.3d 790, 793 (6th Cir. 1996). In some states, the long-arm statute reaches as far as due process permits. *Rabiroads*, 68 F. Supp. 2d at 852. However, the Ohio Supreme Court has determined that Ohio's long-arm statute is not co-extensive with due process, and therefore, determining the existence of personal jurisdiction requires analysis under both Ohio's long-arm statute and federal due process. *Goldstein v. Christiansen*, 70 Ohio St. 3d 232, 235, 638, N.E.2d 541, 543

(1994).  *See also Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir. 1998).  The Court shall address each prong of the mandated inquiry in turn.

### B.  Ohio's Long-Arm Statute

Defendants move to dismiss this action on the grounds that Ohio's long-arm statute does not extend so far as to permit service of process on them.  The parties' dispute focuses on two provisions of Ohio's long-arm statute, Ohio Revised Code § 2307.382(A)(1) and (6), which provide:

> (A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
> (1) Transacting any business in this state;
> . . .
> (6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state[.]

Ohio Rev. Code § 2307.382(A)(1) & (6).

The phrase "transacting any business" in (A)(1) is broadly worded and permits jurisdiction over nonresident defendants "who are transacting any business in Ohio." *Muzzin v. Brooks*, 168 Ohio App.3d 231, 236, 859 N.E.2d 584, 588 (Ohio App. 8th Dist. 2006) (citing *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 53 Ohio St. 3d 73, 75, 559 N.E.2d 477, 480 (1990)).  The word "transact" in the context of the Ohio Revised Code means " 'to prosecute negotiations; to carry on business; to have dealings . . . .  The word embraces in its meaning the carrying on or prosecution of business negotiations but it is a broader term than the word 'contract' and may involve business negotiations which have been either wholly or partly

brought to a conclusion . . . .' " *Kentucky Oaks Mall Co.*, 53 Ohio St. 3d at 75, 559 N.E.2d at 480 (quoting Black's Law Dictionary (5th ed. 1979)).  Moreover, personal jurisdiction "does not require physical presence in the forum state." *Goldstein*, 70 Ohio St. 3d at 236, 638 N.E.2d at 544.

Defendants argue that they do not transact any business in Ohio because they do not own or operate any businesses in Ohio.  They assert that they have never had offices, places of business, post office boxes, or telephone listings in the state.  Defendants also aver that Starmark has no employees, agents, customers, or contracts to supply services in Ohio, and that Starmark derives no revenue from the state.  Additionally, Swanson states that he has never traveled to Ohio for business or personal reasons.  An affidavit from Swanson attests to all of these assertions.  (Doc. # 5-1 ¶ 3.)

In contrast, Defendants assert, Plaintiff traveled to North Dakota, was interviewed and hired by Defendants in North Dakota, moved to North Dakota, and worked for Defendants in North Dakota for approximately six months.  Defendants argue that although they or their agent sent correspondence to Plaintiff while he was in Ohio, these contacts "were minimal, brief and involved business to be performed and carried out in North Dakota, not Ohio."  (Doc. # 5, at 8.)

Plaintiff disputes the allegation that he ever interviewed in North Dakota, as well as the contention that he was hired in that state.  Rather, he argues, all of the negotiations and communications were initiated by Defendants and took place while Plaintiff was in Ohio.  Plaintiff also asserts via affidavit that he was in Ohio on the telephone when he accepted

5

employment with Starmark. (Doc. # 11-3 ¶¶ 4-8.) Finally, Plaintiff notes that Defendants paid Plaintiff through direct deposit in an Ohio bank.

The dispute as to whether Defendants initiated recruitment of Plaintiff in North Dakota or in Ohio–with Plaintiff denying that negotiations took place until he was back in Ohio–is not problematic. Absent an evidentiary hearing, a court is required to consider such information in a light most favorable to the plaintiff. *CompuServe v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996). Regardless of this disagreement, it is undisputed that Defendants or their agents eventually reached into Ohio (perhaps by invitation) to negotiate with Plaintiff. This aids Plaintiff's argument by targeting a factor courts have applied to "help determine whether an out-of-state defendant 'transacted business' within the meaning of the long-arm statute." *McMunigal v. Bloch*, No. 1:09CV01674, 2010 WL 2106186, at *3 (N.D. Ohio May 24, 2010) ("The first factor is whether the out-of-state defendant initiated the dealing. If it were the defendant who 'reached out' to the forum state to create a business relationship, the defendant has transacted business within the forum state." (citation omitted)).

More dispositive is a second factor relevant to today's inquiry, which is " 'whether the parties conducted their negotiations or discussions in the forum state, or with terms affecting the forum state.' " *Id.* This factor does not weigh in Plaintiff's favor.

The fact that this litigation involves a contract signed by one party in Ohio is not dispositive. Under Ohio law, "the mere existence of a contract involving a forum resident does not confer personal jurisdiction." *National City Bank v. Yevu*, 178 Ohio App.3d 382, 385, 898 N.E.2d 52, 54 (Ohio App. 8th Dist. 2008). Additionally, the fact that negotiations reached into

Ohio does not mandate an answer to the personal jurisdiction issue. This is not a case in which a defendant visited Ohio multiple times to make representations in Ohio that induced a plaintiff to enter into the contract at issue. *See, e.g., Kehoe Component Sales, Inc. v. Best Lighting Prods., Inc.*, No. 2:08-cv-752, 2009 WL 2591757, at *3 (S.D. Ohio Aug. 19, 2009) (holding that a defendant's trips to Ohio for negotiations created personal jurisdiction under § 2307.382(A)(1)). Rather, Defendants never visited Ohio to conduct the negotiations,[1] but instead relied only upon emails, phone calls, and at least one letter. Courts have held that such "mere communications to an Ohio resident are insufficient to constitute 'transacting business' within the meaning of the Long-Arm statute." *Id.* (citing *Shaker Constr. Group, LLC v. Schilling*, No. 1:08-cv-278, 2008 WL 4346777 (S.D. Ohio Sept. 18, 2008)). Thus, " '[m]erely directing communications to an Ohio resident for the purpose of negotiating an agreement, without more, is insufficient to constitute "transacting business" within Ohio.' " *Id.* at *4 (quoting *Shaker*, 2008 WL 4346777, at *3). *Cf. Matrix Essentials v. Harmon Stores Inc.*, 205 F. Supp. 2d 779, 785-86 (N.D. Ohio 2001) (rejecting interstate letters related to litigation that resulted in a settlement agreement as "transacting business"). There is no "more" here–in other words, no "continuing obligation that connects the non-resident defendant[s] to the state or some terms of the agreement that affect the state." *Shaker*, 2008 WL 4346777, at *3 (citing *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 53 Ohio St. 3d 73, 76, 559 N.E.2d 477, 480 (1990); *U.S. Sprint Commc'ns Co. Ltd. P'ship*, 68 Ohio St. 3d 181, 185, 624 N.E.2d 1048, 1052 (1994)).

---

[1] This fact distinguishes the instant case from those actions in which a party visited Ohio and contracted while here. *See, e.g., Tradesmen Group, Inc. v. Cecil*, No. 2:090cv01032, 2010 WL 1957689, at *4 (S.D. Ohio May 14, 2010).

Although Plaintiff points to the fact that Defendants paid him by direct deposit to an Ohio bank, this falls short of the Ohio-centric ongoing relationship in cases such as *Kentucky Oaks Mall Co.* In that case, an out-of-state Georgia corporation assumed the ongoing obligation of making lease payments to an Ohio company with an Ohio address for rental of a Kentucky warehouse. Here, the facts involve payments made into an Ohio bank by a North Dakota company for work done in North Dakota by an employee living and working in North Dakota. Unlike in the lease agreement, the employment agreement did not mandate payments into Ohio.

The instant case is arguably closer to *Fryer v. Ron Wager & Bantz, Gosch & Cremer*, No. 2:07-cv-593, 2008 WL 3285913 (S.D. Ohio Aug. 8, 2008). In *Fryer*, Ohio-resident plaintiffs (one of whom who was injured on a trip to South Dakota) contacted a South Dakota law firm regarding representation. The law firm mailed the plaintiffs a fee agreement, which they received and executed in Ohio. The plaintiffs then mailed the agreement from Ohio back to South Dakota. The law firm communicated with the plaintiffs by sending them documents, emails, and facsimile transmissions, as well as by making calls to Ohio. The services related to the contract were provided in South Dakota, and the only contacts with Ohio were those necessary to communicate regarding the South Dakota claims. *Id.* at *2-3. The judicial officers from this District who addressed these facts noted that the law firm "did not initiate contacts with the plaintiffs, the defendants never entered Ohio, and the duties under the agreements were to be conducted outside of Ohio." *Id.* at *6. Thus, the judges concluded, "[l]ong distance correspondence between in-state plaintiffs and out-of-state defendants concerning duties to be performed out-of-state is not sufficient to confer jurisdiction under Ohio's long-arm statute." *Id.*

Similarly, Defendants never entered Ohio and the duties under the contract were to be performed in North Dakota. Although Defendants may have initiated recruitment outside Ohio, they reached into the state at Plaintiff's direction to continue employment discussions. Moreover, the incidental transfer of salary by direct deposit into an Ohio bank was at Plaintiff's direction. In other words, as in *Fryer*, there are insufficient Ohio contacts to find the transaction of business in this state.

In addition to meeting the foregoing two factors, Plaintiff would have to demonstrate that a substantial connection exists between Defendants and Ohio. *McMunigal*, 2010 WL 2106186, at *4. But the communications from Defendants to Plaintiff in Ohio "happened solely because Plaintiff happens to reside in Ohio, not because [Defendants] wished to create any kind of 'substantial connection' with the state." *Id.* Moreover, Plaintiff's failure to satisfy the second factor above renders moot his interestingly creative argument that his departure from Ohio affected the commerce of that state.

This Court therefore concludes that § 2307.382(A)(1) does not provide the basis for exercising personal jurisdiction here. This leaves § 2307.382(A)(6). As noted, that latter provision targets whether a defendant caused tortious injury in Ohio to any person by an act committed outside Ohio and with the purpose of injuring a person or persons, when the defendant might reasonably have expected that some person would be consequently injured in Ohio.

Discussing the tortious injury provision, another judicial officer in this District has recognized that "our sister courts have taken a broad approach to jurisdiction under subsection (6) of Ohio's long-arm statute." *Shaker*, 2008 WL 4346777, at *4. Despite this approach, and

9

even with a plaintiff's " 'relatively slight' " burden of establishing a *prima facie* case of jurisdiction, Plaintiff has not satisfied § 2307.382(A)(6) here. The *Shaker* court explained:

> District courts in this circuit have held that alleged fraudulent communications can satisfy the "causes tortious injury by an act or omission in this state" portion of the Ohio long-arm statute. *See, e.g.*, *Ashton Park Apartments, Ltd. v. Lebor,* 252 F. Supp. 2d 539, 548 (N.D. Ohio 2003) (holding that subsection (A)(6) was satisfied where a nonresident defendant made fraudulent misrepresentations to Ohio resident in communications to Ohio); *Highway Auto Sales, Inc. v. Auto-Konig of Scottsdale, Inc.*, 943 F. Supp. 825, 829 (N.D. Ohio 1996) (holding that the nonresident defendant's acts of negligent misrepresentation and intentional fraud caused injury in Ohio and thus brought the action under the sixth category of the long-arm statute).

*Shaker*, 2008 WL 4346777, at *4. Under Plaintiff's argument, the asserted misrepresentations regarding the material terms of his employment, which were allegedly revealed as fraudulent on Plaintiff's first day of employment, satisfy this standard.

Plaintiff summarizes his theory as follows:

> Any injury Plaintiff suffered as a result of Defendants' conduct naturally occurred in Ohio, the state: (1) where he maintained his permanent residence during the entire time he was employed with Defendants; (2) where he returned to immediately after his employment with the Defendants was terminated; and, (3) where the Defendants failed to pay Plaintiff in breach of the contract.
>
> It was also foreseeable that Defendants' misrepresentations would cause injury in Ohio because the Defendants were aware that Plaintiff would return there after he was terminated.

(Doc. # 11, at 15.) It is this last component that resolves the personal jurisdiction issue.

Ohio's long-arm statute requires that a defendant "reasonably have expected" that some person would be injured in Ohio by the asserted tortious conduct. Ohio Rev. Code § 2307.382(A)(6). Defendants argue that Plaintiff was required to live and work in North Dakota and that no facts exist suggesting that Defendants expected an injury in Ohio. The negotiated plan and Plaintiff's expectation was that he would work for a period of time in North Dakota and

10

then move to New York, a market into which Defendants had represented they would expand. Thus, Defendants posit, "Plaintiff's admission that the parties believed he would be working in either North Dakota or New York, but not Ohio, necessarily means that Defendants could not have anticipated that Plaintiff would be injured in Ohio." (Doc. # 12, at 3.)  This Court concludes that Plaintiff has therefore failed to establish a *prima facie* case under  § 2307.382(A)(6).

### C. Due Process

Because this Court has concluded that Plaintiff has failed to establish that § 2307.382(A)(1) or § 2307.382(A)(6) apply, the Court need not and does not whether exercising jurisdiction would comport with due process.  *See Fryer*, 2008 WL 3285913, at *6 ("Because jurisdiction over [D]efendants is not conferred by Ohio's long arm statute, it is unnecessary to resolve whether personal jurisdiction over Defendants would conform to the requirements of the Due Process Clause of the Fourteenth Amendment to the United States Constitution."); *Dahlhausen v. Aldred*, Nos. CA2009-08-049 & CA2009-08-053, 2010 WL 1960262, at *6 (Ohio App. 12 Dist. May 17, 2010) (declining to engage in due process analysis where analysis under Ohio's long-arm statute proved dispositive).

### III. Transfer

Having concluded that it cannot exercise personal jurisdiction over this action, the Court also need not address Defendants' moot alternative argument for transfer under § 1404(a).  *See Pittock v. Otis Elevator Co.*, 8 F.3d 325, 329 (6th Cir. 1993) ("a transfer under section 1404(a) may not be granted when the district court does not have personal jurisdiction over the defendants").

Although this Court lacks personal jurisdiction over Defendants and cannot effectuate a transfer under § 1404(a), dismissal is not required. A district court has the discretion to transfer a case under 28 U.S.C. § 1406(a) to a proper forum rather than simply dismiss the case, even when personal jurisdiction does not exist. *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962); *Fryer*, 2008 WL 3285913, at *6-7; *Krawec v. Allegany Co-Op Ins. Co.*, No. 1:080CV-2124, 2009 WL 1974413, at *3 (N.D. Ohio July 7, 2009). Additionally, "[a] court may transfer a case pursuant to 28 U.S.C. § 1406(a) *sua sponte* even if the defendant moves only to dismiss." *Holey Soles Holdings, Ltd. v. Foam Creations, Inc.*, No. 05 CIV. 6939(MBM), 2006 WL 1147963, at *9 (S.D.N.Y. May 1, 2006).

Because the interest of justice is typically better served by transfer, concerns about whether to transfer or dismiss are generally resolved in favor of transfer. *See Flynn v. Greg Anthony Constr. Co., Inc.*, 95 F. App'x 726, 741 (6th Cir. 2003) (holding that transfer rather than dismissal was appropriate where transfer mooted lack of personal jurisdiction, served the goal of permitting adjudication on the merits, and avoided unnecessary hurdle of re-filing). This Court finds that the interests of justice would be served by the transfer of this case. Consequently, the Court **TRANSFERS** this action under § 1406(a) to the United States District Court of North Dakota.

## IV.  Conclusion

For the foregoing reasons, the Court **DENIES** Defendant's motion to dismiss or to transfer pursuant to § 1404(a), but **TRANSFERS** this action pursuant to § 1406(a) to the United States District Court of North Dakota.  (Doc. # 5.)  The Clerk shall therefore transfer this case to the United States District Court of North Dakota.

**IT IS SO ORDERED**.

/s/ Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE